# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENNIE WILL DELOACH,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No. 1:23-cv-00692-SAB<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DIRECTING THE CLERK OF THE COURT TO ENTER JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF BENNIE WILL DELOACH AND TO CLOSE THIS ACTION<br><br>(ECF Nos. 10, 11) |

## I.

## INTRODUCTION

Bennie Will Deloach ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff requests the decision of Commissioner be vacated and the case be remanded for benefits or in the alternative further proceedings, arguing the ALJ erred by failing to provide clear and

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes. (See ECF Nos. 5, 7, 8.)

1  convincing reasons to reject his symptom testimony.

2      For the reasons explained herein, Plaintiff's motion for summary judgment shall be denied.

## II.

## BACKGROUND

### A. Procedural History

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on March 22, 2021. (AR 75.) Plaintiff's application was initially denied on July 13, 2021, and denied upon reconsideration on March 23, 2022. (AR 127-31, 138-42.) Plaintiff requested and received a hearing before Administrative Law Judge Lisa B. Martin ("the ALJ"). Plaintiff appeared for a video hearing on September 27, 2022. (AR 47-74.) On October 28, 2022, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 21-37.) On March 22, 2023, the Appeals Council denied Plaintiff's request for review. (AR 1-3.)

### B. The ALJ's Findings of Fact and Conclusions of Law

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, October 28, 2022:

1. Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2025.
2. Plaintiff has not engaged in substantial gainful activity since February 9, 2021, the alleged onset date.
3. Plaintiff has the following severe impairments: cervical and lumbar spine disorders; bilateral knee disorders status post left knee replacement; recent left femur fracture (April 2022); bilateral hand osteoarthritis; hypertension; obesity; and post-traumatic stress disorder.
4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.
5. After careful consideration of the entire record, the ALJ found that Plaintiff has the residual functional capacity to perform a full range of light work as defined in 20 CFR § 404.1567(b), except as follows. He is limited to 4 hours of standing/walking, the rest

sitting without limitation, in an 8-hour workday, and needs a change of position opportunity as often as every 30 minutes for 1-2 minutes. He will need the opportunity to use a cane when performing required ambulation longer than 5 minutes. He is precluded from all ladders, ropes, and scaffolds climbing, and all dangerous work hazards exposure. He is limited to performing the remaining postural motions occasionally. He is limited to frequent, but not constant, bilateral upper extremity reaching, handling, and fingering tasks. He is limited to performing occasional pushing/pulling and foot control tasks with the left lower extremity. He is precluded from all exposure to extreme heat, humidity, and cold conditions, all exposure to concentrated vibrations, and all exposure to uneven surface/unpaved walking tasks. He is limited to routine, simple work tasks, and work not requiring a fast assembly quota pace (i.e., fast assembly line environment where one's work impacts work down the line). He is limited to having only occasional work interactions with the public. He will be off task up to 3% of workday due to momentary symptom distractions.

6. Plaintiff is unable to perform any past relevant work,

7. Plaintiff was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.

8. Plaintiff has at least a high school education

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not he has transferable job skills.

10. Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform.

11. Plaintiff has not been under a disability, as defined in the Social Security Act, from February 9, 2021, through the date of this decision.

(AR 26-36.)

///

# III.

# LEGAL STANDARD

## A.   The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[3] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on the claimant at steps one through four. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020). A

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

[3] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only disability insurance benefits in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

claimant establishes a *prima facie* case of qualifying disability once he has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[4] A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To do this, the ALJ can use either the Medical Vocational Guidelines ("grids") or rely upon the testimony of a VE. See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' " Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

**B.   Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In

---

[4] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly erroneous standard). "[T]he threshold for such evidentiary sufficiency is not high." Biestek, 139 S. Ct. at 1154. Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. Stout, 454 F.3d at 1055–56. Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

///

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ erred by rejecting his symptom testimony. (Pl.'s Motion for Summary Judgment ("MSJ") 6,[5] ECF No. 10.) Plaintiff concedes that the ALJ found that he met the first step of the analysis, that his medically determinable impairments could cause the alleged symptoms, but contends that the language used is the same language as a matter of routine in nearly every decision. Plaintiff asserts that other than a general discussion of the medical evidence, the ALJ did not offer sufficient reasons to find his symptom testimony not consistent with the record, and did not provide specific, clear and convincing reasons. (MSJ 9.) Plaintiff argues that he has met all the parts of the test to have this action remanded for payment of benefits. (MSJ 19.)

Defendant counters that the ALJ properly found that the objective medical evidence did not support Plaintiff's claims of disabling symptoms and functional limitations. (Def.'s Opposition ("Opp.") 6, ECF No. 7.) Defendant argues that the ALJ noted Plaintiff's testimony regarding his functional limitations and the consistently normal findings on examination. (Opp. 7.) Defendant also contends that the ALJ considered that Plaintiff did not appear to be motivated to work, and that his daily activities were inconsistent with his alleged level of impairment. (Opp. 7-9.) Finally, Defendant asserts that the ALJ pointed out that the state agency consultants contradicted Plaintiff's complaints and concluded that he could perform at least a range of light work with limited public contact. (Opp. 9.) Defendant requests that the Court affirm the ALJ's decision, but that should the Court find error, the proper remedy would be for remand for further proceedings. (Opp. 10-12.)

### A. Legal Standard

A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); SSR 16-3p; see also Orn, 495 F.3d at 635 ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment."). Rather, an ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. See Garrison v. Colvin,

---

[5] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; SSR 16-3p, at *3.  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82.  If the claimant satisfies the first step and there is no evidence of malingering, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations omitted).

If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive.  The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.  In this regard, questions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary.  Valentine v. Astrue, 574 F.3d 685, 693 (9th Cir. 2009) (quotation omitted); see also Lambert, 980 F.3d at 1277.

In addition to the medical evidence, factors an ALJ may consider include the location, duration, and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; conflicts between the claimant's testimony and the claimant's conduct—such as daily activities, work record, or an unexplained failure to pursue or follow treatment—as well as ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, internal contradictions in the claimant's statements and testimony, and other testimony by the claimant that appears less than candid.  See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014); Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007); Smolen, 80 F.3d at 1284.  Thus, the ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of her symptoms; statements and other information from medical providers and other third parties; and any other relevant evidence included in the individual's administrative record.  SSR 16-3p, at *5.

///

**B.     Plaintiff's Testimony**

1.     September 27, 2022 hearing

Plaintiff testified at the September 27, 2022 hearing.  (AR 54-66.)  Plaintiff lives by himself. (AR 54.)   He last worked February 28, 2021, as a firefighter for the Department of Defense ("DOD").  (AR 55.)  He was doing a desk job after being put on light duty for his last two years. He was seeing a psychiatrist at the time, and he was given the job to keep him at work.  He would order things for the department.  Plaintiff receives retirement income from the DOD, and disability through the military.  (AR 56.)  His disability rating through the Veteran's Administration ("VA") is 100 % due to post traumatic stress disorder ("PTSD"), bad knees, flat feet, hearing, and back issues and he was considered 100 % disabled six years ago.  (AR 57.)  Plaintiff has had four knee surgeries, the most recent being a knee replacement in March 2021.  Plaintiff's condition had gotten worse, through the years he went on medical pause a "bunch" of times, and developed PTSD from working on adults and kids and having fifteen people die during his last fifteen years on the job. (AR 58.)  When his knee problem arose, Plaintiff said he could not do this anymore and was placed on light duty due to the combination of the PTSD and his knee issues.  (AR 58-9.)

Plaintiff had knee replacement surgery and did not fully regain the motion in his knee, so he underwent anesthesia to have a manipulation done to get his range of motion back.  The knee manipulation was at least five months after the surgery.  (AR 59.)  His knee improved for a day or two, and then he started physical therapy but never regained his range of motion.  His knee gave out in April of this year, and he broke his femur.  (AR 60.)

Plaintiff is able to walk to his mailbox, about forty feet, with a cane.  He does a lot of online shopping because he cannot walk through the grocery store.  He has tried, but it is too much for him.  (AR 60.)  Plaintiff was walking with a cane before his femur fracture, and the whole time since he had the knee manipulation.  His physician told him that they will check his knee in a year and a half to see where he is at, that he has developed scar tissue and that is why Plaintiff is having so many problems.  (AR 61.)  At first, Plaintiff was using a walker, but then he progressed to a cane.  He does not have the balance or strength in his legs to walk long distances.  (AR 62.)

Plaintiff was put on Zoloft for his mental health issues about two months ago, but that is all

9

the treatment he has received. (AR 62-3.) He was on a different medication prior to that, but he did not feel right while taking the medication. Plaintiff was doing some type of therapy with glasses and flashing lights but stopped when Covid started. His doctor calls to check in with him once or twice a week. (AR 63.) That has been occurring for the past two years since he was working at the fire department. Plaintiff was taking medication for alcohol use and went into a treatment facility. He was inpatient for about two weeks. It was not a right fit for him, and he did not feel right there. (AR 64.) He is no longer taking the medication for alcohol use. Plaintiff is still drinking alcohol once or twice a week. (AR 65.)

Plaintiff can stand comfortably for ten minutes at one time. He can sit comfortably for ten to fifteen minutes at a time. Transitioning from standing and sitting is the worse. He is constantly moving. He has arthritis in his right hand, little finger. He is taking medication for it. (AR 65.) It really hurts to write or make a fist. (AR 66.)

2. <u>April 2, 2021 Adult Function Report</u>

Plaintiff completed an adult function report on April 2, 2021. (AR 281-88.) He recently retired due to PTSD and a knee replacement from his career as a firefighter. With these conditions he is no longer able to perform those job functions. He is no longer able to go on EMT related calls per his psychologist. (AR 281.) As of March 9, Plaintiff does physical therapy and watches television daily. He has nightmares and medication has not helped. He has no problems with personal care. (AR 282.) He does not need reminders to take his medication or for personal care. He prepares easy meals as he cannot stand or walk for any length of time. It takes him ten minutes to prepare a meal. Plaintiff does laundry three times per week, and it takes him longer than it used to. A friend helps with the yard work and indoor chores. He is unable to bend down to clean and cannot stand or walk for more than a few minutes. (AR 283.)

He goes outside two times per day for fresh air for about ten minutes. He walks when he travels. He uses a walker and was not driving at the current time. Plaintiff shops by phone for groceries and household products. He has items delivered by Instacart once a week. He is able to pay bills, count change, handle a savings account, and use a checkbook. (AR 284.) His hobby is golf, but he has not been able to golf. He spends time with others on the phone and texting. He

goes to the golf course, bar, and restaurant on a regular basis. He does this less than half the time he used to. He needs someone to accompany him because he is not steady when walking and needs assistance. He PTSD keeps him from crowds. He has problems getting along with people because they do not understand PTSD and he does not want to be around people. (AR 285.)

His conditions affect lifting, squatting, bending, walking, sitting, stair-climbing, kneeling, completing tasks, concentration, and getting along with others. Because of his knee, Plaintiff has to use a walker, is unable to bend, sit, or climb without pain. His PTSD consumes a lot of his mind throughout the day. Concentrating on much else has been a challenge for him. He can walk 10 minutes, which is from the door to the sidewalk, before needing to stop and rest for five to ten minutes. He can pay attention for thirty minutes. He is able to finish what he starts. He can follow written instructions but does not remember spoken instructions well. (AR 286.)

He does not handle stress well anymore and his PTSD gives him constant stress. He is able to handle changes in routine. He has unusual thoughts or fears of sirens, car accidents and needing to perform CPR. He uses crutches, a walker, and a cane and needs an assistive device at all times currently. (AR 287.) He was prescribed medication for his PTSD, but it made his symptoms worse, and he is currently taking natural supplements for his stress and anxiety. (AR 288.)

**C.     Whether the ALJ Erred in Addressing Plaintiff's Symptom Testimony**

The also stated the following:

At the hearing, the claimant testified that he has not worked since leaving his job as a firefighter in in February 2021. He is financially supported by retirement and disability benefits. He retired from his longtime firefighter job because worsening knee pain and PTSD symptoms made him feel like he could not handle the work anymore. He underwent knee replacement surgery a month later, i.e., in March 2021. He continued to have limited range of motion despite the surgery, so he underwent manipulation under anesthesia five months later. His range of motion still did not improve. His doctors told him this is because of scar tissue. Recently, he fell and fractured his femur. Even before this, he was unable to walk without a cane, unable to walk more than 40 feet even with the cane, and unable to stand for longer than 10 minutes without needing to sit and rest. Despite having PTSD, he did not take any medication for his mental health until a month or two before the hearing, at which time he started Zoloft. Prior thereto, he started medication for alcohol use, but he eventually went into a two-week inpatient alcohol treatment program. He still drinks alcohol once or twice a week. Asked by counsel about his hand(s), the claimant said he has problems with his right hand because of arthritis in his right index finger, which hurts when he tries to write (Hearing Record).

After careful consideration of the evidence, the undersigned finds that the

> claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> The overall record in this case fails to demonstrate that the claimant has been incapable of working during the period at issue. To be sure, the record does support the claimant's alleged inability to continue working as a firefighter, and his claim in this regard is entirely consistent with the conclusions reached herein. However, it is clear the claimant's work as a firefighter was very physically demanding, involving a lot of standing/walking as well as very heavy lifting/carrying (e.g., fire hose and equipment weighing "100 pounds or more") (Exhibit 2E/4). It is also clear the work was mentally taxing, involving high-stress emergency response situations and, undoubtedly, reminders of past trauma. There is no evidence, however, that the claimant has attempted to do any less demanding work consistent with the limitations set forth the above residual functional capacity. Of course, it is possible that the claimant may not be especially motivated to work at this point, given his reported receipt of both VA disability benefits and Fire Department retirement benefits. In any case, the longitudinal evidence tends to show that the claimant has remained capable of performing light work, albeit a significantly reduced range of light work (as found above).

(AR 30-1.)

### 1. Inconsistency with medical evidence

Plaintiff argues that the only reason the ALJ provided to reject his testimony was that his symptom testimony was inconsistent with the medical evidence and rejecting his symptom testimony solely because it is inconsistent with the medical evidence is not allowed. Defendant counters that the ALJ properly considered that Plaintiff's symptom complaints were inconsistent with the medical evidence.

Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence." See Vertigan, 260 F.3d at 1049 ("The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it."); see also 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."). Rather, where a claimant's symptom testimony is not fully substantiated by the objective medical record, the ALJ must provide an additional reason for discounting the testimony. See Burch, 400 F.3d at 680–81.

12

Nevertheless, the medical evidence "is still a relevant factor in determining the severity of [the] claimant's pain and its disabling effects." Burch, 400 F.3d at 680–81; Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).  Furthermore, Ninth Circuit caselaw has distinguished testimony that is "uncorroborated" by the medical evidence from testimony that is "contradicted" by the medical records, deeming the latter sufficient on its own to meet the clear and convincing standard.  See Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) ("The ALJ … identified several contradictions between claimant's testimony and the relevant medical evidence and cited several instances of contradictions within the claimant's own testimony.  We will not reverse credibility determinations of an ALJ based on contradictory or ambiguous evidence."); Hairston v. Saul, 827 Fed. App'x 772, 773 (9th Cir. 2020) (quoting Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008) (affirming ALJ's determination claimant's testimony was "not entirely credible" based on contradictions with medical opinion)) ("[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); see also Stobie v. Berryhill, 690 Fed. App'x 910, 911 (9th Cir. 2017) (finding ALJ gave two specific and legitimate clear and convincing reasons for rejecting symptom testimony: (1) insufficient objective medical evidence to establish disability during the insured period and (2) symptom testimony conflicted with the objective medical evidence); Woods v. Comm'r of Soc. Sec., No. 1:20-cv-01110-SAB, 2022 WL 1524772, at *10 n.4 (E.D. Cal. May 13, 2022) ("While a *lack* of objective medical evidence may not be the sole basis for rejection of symptom testimony, inconsistency with the medical evidence or medical opinions can be sufficient." (emphasis in original)).  In applying the clear and convincing standard, the Ninth Circuit affirmed "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." Carmickle, at 533 F.3d at 1161.

    **a.    Inconsistency with medical evidence**

The ALJ considered that Plaintiff alleged that he was unable work because he had PTSD, however, Plaintiff did not take any medication for his mental health symptoms until a month or two prior to the hearing at which time he started Zoloft.  (AR 30, 62-3.)

The ALJ also considered that Plaintiff alleged that he is forgetful, and considered a May 29,

2021, psychological evaluation by Dr. Colonna. (AR 588-92.) Plaintiff was ambulating with a cane. Plaintiff stated that he had PTSD, had vivid nightmares, and was unable to work. (AR 588.) Plaintiff was not taking any medication for his mental health issues. He reported he was able to dress, bathe, shop and do household chores. (AR 589.) Current intellectual functioning was low average. Mood was mildly dysthymic, and affect was slightly anxious. Plaintiff's memory was mildly diminished for immediate, intermediate, and remote recall. Attention and concentration span were mildly diminished. (AR 590.) Upon psychometric testing, Plaintiff obtained a working memory score of 80 and a FSIQ score of 70. (AR 28, 591.) Plaintiff's cognitive ability was noted to be in the low average range. (AR 591.) Examination was otherwise unremarkable. Dr. Colonna opined that Plaintiff would be able to understand, remember and carry out short simplistic instructions without difficulty, and had a mild inability to understand, remember and carry out detailed instructions. He would be able to make simplistic work-related decisions without special supervision. Plaintiff presented with a mild inability to interact appropriately with supervisors, coworkers, and peers. He was able to manage finances on his own behalf. (AR 592.)

The ALJ also considered a January 28, 2022, mental examination by Dr. Colonna. (AR 1169-73.) Plaintiff drove himself to the examination. (AR 1169.) There is no indication that he used any assistive device to ambulate. Plaintiff stated he was 100% disabled due to his PTSD. (AR 1170.) Plaintiff was not taking any medication for his PTSD nor does he take any antidepressants. (AR 1170-71.) Plaintiff reported he was able to do light household chores, could handle his own funds, and pay bills, and could drive alone although he prefers not to. (AR 1171.) Mental examination was unremarkable. (AR 1171-72.) Dr. Colonna opined that Plaintiff was able to understand, remember, and carry out short, simplistic instructions without difficulty and had a moderate ability to understand, remember, and carry out detailed instructions. He would be able to make simplistic work-related decisions without special supervision. Plaintiff would have a moderate inability to interact appropriately with supervisors, coworkers, and peers. (AR 1173.)

Based on these mental examinations in 2021 and 2022, the ALJ found Plaintiff to have at the most a mildly diminished memory and otherwise normal cognitive functioning. (AR 28, 589, 1171-72.) Further, the ALJ noted that Plaintiff lived alone, was able to pay bills and otherwise

manage his own finances. (AR 28, 270, 1171.) The ALJ further considered that Plaintiff alleged difficulty concentrating, but found these same mental examinations showed him to have at most mildly diminished concentration. (AR 29, 590, 1171-72.)

Plaintiff argues that the ALJ failed to articulate how these limited activities demonstrate that he had the ability to sustain work activity on a sustained basis. "An ALJ may also consider whether the claimant engages in activities inconsistent with the alleged symptoms." Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022). Ninth Circuit caselaw demonstrates that ADLs may be grounds for discounting allegations that an impairment is so severe it is totally debilitating, even if such activities are not directly transferrable to a work setting. See Molina v. Astrue, 674 F.3d 1104, 1112–13 (9th Cir. 2012), superseded by regulation on other grounds (noting "the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferrable to a work setting … Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (internal citations omitted); see also Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (affirming the ALJ's decision where the claimant's allegations were inconsistent with activities of personal care, shopping, chores, riding public transportation, and driving); Burch, 400 F.3d at 680 (finding the ALJ properly discounted the claimant's allegations where the claimant's activities suggest higher functionality, including caring for personal needs, cooking, cleaning, shopping, and interacting with family).

Here, the ALJ reasonably found that Plaintiff's ability to live alone, pay bills, and manage his own finances was inconsistent with his allegations that his memory and concentration were so impaired that he was unable to work.

The ALJ also noted that the evidence fails to show that Plaintiff was as limited as he alleged following his knee surgery. The ALJ noted that Plaintiff's knee surgery was uncomplicated and largely successful. Postoperative treatment records show that Plaintiff made slow progress in the months after his surgery, during which he continued to have some limitation in range of motion. (AR 31, 1451.) The ALJ also considered that Plaintiff underwent a knee manipulation on November 17, 2021, to improve the range of motion in his knee. (AR 31, 1566.) However, the

1  ALJ also noted that the same follow-up check up indicated that residual stiffness was Plaintiff's
2  only complaint several months post arthroplasty. (AR 31, 1451.) At this appointment, Plaintiff
3  stated that stiffness was his only complaint. He was not having any significant pain and was doing
4  most of his activities without any issue. (AR 31, 1451.) The ALJ noted that there is little evidence
5  of any further knee related treatment following the manipulation procedure in November 2021,
6  which he found to be another indication that any residual symptoms were not especially serious or
7  limiting. (AR 31.)

8        Plaintiff does not challenge the ALJ's finding that his allegations are inconsistent with the
9  medical evidence but argues that the ALJ failed to link the findings to any inconsistency with
10 Plaintiff's testimony. The Court finds that the ALJ sufficiently articulated his findings and there is
11 substantial support in the record for the finding that Plaintiff's symptom complaints were
12 inconsistent with the medical evidence.

13       **b.    Contradiction with medical evidence**

14       The ALJ considered that at the September 27, 2022 hearing, Plaintiff stated that even before
15 he broke his femur, he was unable to walk without a cane, unable to walk more than 40 feet even
16 with the cane, and unable to stand for longer than 10 minutes without needing to sit and rest. (AR
17 30, 60-1.) However, the medical record showed that Plaintiff was out and about without the use of
18 cane or other ambulatory device. (AR 31.) The ALJ cited the January 28, 2022 psychiatric
19 examination, which noted that Plaintiff drove himself independently to the examination without
20 any indication that Plaintiff appeared using a cane. (AR 1169.) The ALJ also noted the January
21 31, 2022, comprehensive internal medical examination of Plaintiff by Dr. Siekerkotte. (AR 1177-
22 82.) Plaintiff reported that he takes care of his personal needs. He can sweep, mop, vacuum, do
23 the dishes, laundry, shopping, and cooking. (AR 1178.) Plaintiff came to the appointment without
24 a cane. (AR 1179.) Substantial evidence supports that ALJ's finding that Plaintiff's that he was
25 unable to ambulate more than 40 feet without the use of a cane was contradicted in the medical
26 record.

27       2.    <u>Conservative Treatment</u>

28       The ALJ also noted that the record indicated that Plaintiff was adequately managing his

residual pain with only Motrin as of March 2022. (AR 31, 1575.) On May 21, 2022, Plaintiff was seen by his physician stating he was drinking every day and wanted Naltrexon medication. He was taking Motrin for his knee pain, and it hurt when he exercised. (AR 1575.) "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006). The ALJ could reasonably find that Plaintiff's allegation of disabling knee pain was inconsistent with his use of only over the counter medication to control his pain.

### 3. Lack of motivation to work

Finally, the ALJ considered that Plaintiff had not attempted to do any less demanding work than the firefighter position, and he possibly lacked the motivation to work because he was receiving his pension and disability payments. (AR 31.) Plaintiff argues that the ALJ erred because he was motivated to voluntarily serve his country in the Navy and then serve as a firefighter for 25 years, but the ALJ suddenly found him not credible due to lack of being motivated because he receives a pension and VA benefits. (MSJ 13.) However, at the September 27, 2022 hearing, the ALJ asked Plaintiff about transitioning to light duty. Plaintiff responded as follows:

> pretty much a lot of things got worse. And throughout the years of me going on a bunch of medical pause and, you know, developing PTSD through the job over the years of working on little kids and adults, you know, having like at least 15 deaths in my 15 years of being on the ambulance, my last 15 years for the job, I probably had about at least 15 deaths. So that really, and the knee problem, really was the thinq that say hey, I can't do this anymore.

(AR 58.)

The ALJ could reasonably draw the inference that Plaintiff was not motivated to work due to receiving retirement and disability income and the fact that he had not attempted to find any less demanding work. Shuey v. Astrue, 480 F. App'x 439, 441 (9th Cir. 2012); Kollmeyer v. Comm'r of Soc. Sec. Admin., No. CV-17-02749-PHX-BSB, 2019 WL 341580, at *17 (D. Ariz. Jan. 28, 2019), aff'd sub nom. Kollmeyer v. Kijakazi, No. 19-15337, 2022 WL 1577790 (9th Cir. May 19, 2022) (lack of financial incentive to work is relevant in assessing claimant's credibility and motivation); see also Tommasetti, 533 F.3d at 1040 (ALJ's inference regarding claimant's motivation to work was not unreasonable); Merillat v. Comm'r of Soc. Sec. Admin., 350 F. App'x

1  163, 166 (9th Cir. 2009) (ALJ can properly consider inference that claimant not motivated to work
2  as opposed to collect benefits).

### 4. Daily Activities

Defendant argues that the ALJ's opinion is supported by his activities of daily living and the ALJ reasonably found that Plaintiff's allegations about disabling symptoms and physical limitation were inconsistent with evidence that Plaintiff had no problems with personal care, focused well enough to pay his bills, managed his finances, spent times with others, performed household chores, lived alone, and was able to drive by himself.  (Opp. 8.)  Defendant asserts that given the severity of Plaintiff's symptom allegations, the ALJ reasonably found that these activities conflict with his subjective complaints.  (Opp. 9.)

In addressing the lay witness testimony that Plaintiff's PTSD was very debilitating, the ALJ considered that Plaintiff had not received any psychiatric treatment for his alleged PTSD symptoms.  (AR 33.)  He also considered that this testimony conflicted with Plaintiff's statements that he had no difficulty caring for his personal needs; focuses well enough to pay bills and manage his finances; regularly spends time with others in person, on the phone or by text; has no significant problems getting along with others; does household chores; drives himself places as needed; and lives alone.  (AR 33.)  The ALJ found that these "acknowledged activities and abilities tend to indicate that his mental condition is not especially serious or limiting, particularly when his lack of psychiatric treatment is also considered.  (AR 33-4.)

The ALJ did identify statements that conflict with Plaintiff's testimony, such as on April 2, 2021, Plaintiff stated he could not bend to clean and cannot stand or walk more than a few minutes and a friend helps him with household chores (AR 283), but on May 29, 2021, and January 28, 2022, Plaintiff reported that he was able to do household chores (AR 589, 1171).  However, the ALJ never linked these inconsistent statements to Plaintiff's allegations regarding his limitations due to his knee pain.  Rather the ALJ found they were inconsistent with Plaintiff's allegations regarding the severity of his PTSD symptoms.  While the Court may draw reasonable inferences from the ALJ's opinion, Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989), it cannot consider Defendant's post hac rationalizations.  "A reviewing court can evaluate an agency's decision only

on the grounds articulated by the agency." Ceguerra v. Sec'y of Health & Human Servs., 933 F.2d 735, 738 (9th Cir. 1991). Despite this, the ALJ did provide other clear and convincing reasons to reject Plaintiff's testimony as discussed above.

The Court finds that the ALJ provided specific, clear and convincing reasons to reject Plaintiff's symptom testimony. Accordingly, Plaintiff's motion for summary judgment shall be denied.

## V.

## CONCLUSION AND ORDER

In conclusion, the Court denies Plaintiff's Social Security appeal and finds no harmful error warranting remand of this action.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Bennie Will Deloach. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **April 4, 2024**

UNITED STATES MAGISTRATE JUDGE